1

2

3

4

5

6

7

8

9

10

11

12

13

14

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CODY HUNTER FUNDERBURK,

Plaintiff,

v.

VIRGINIA MASON MEDICAL
CENTER doing business as BAILEY-
BOUSHAY HOUSE; COMMONSPIRIT
HEALTH doing business as VIRGINA
MASON FRANCISCAN HEALTH,

Defendants.

CASE NO. 2:25-cv-01495-JNW

ORDER DENYING PLAINTIFF'S
MOTION FOR EMERGENCY
INJUNCTIVE RELIEF

15

16

17

18

19

20

21

22

23

## 1.  INTRODUCTION

Plaintiff Cody Funderburk moves for emergency injunctive relief. Dkt.

No. 26. The Court construes the motion as one for an emergency temporary

restraining order under Rule 65. Fed. R. Civ. P. 65; LCR 65. The Court DENIES the

motion for the reasons below.

## 2.  BACKGROUND

Funderburk was a shelter advocate at Bailey Boushay House who worked

directly with shelter participants. Between 2022 and 2024, Funderburk experienced

**ORDER** DENYING PLAINTIFF'S MOTION FOR EMERGENCY INJUNCTIVE RELIEF - 1

harassment by shelter participants and complained to Bailey Boushay House about the harassment, asserting a hostile work environment. In October 2024, Funderburk commenced a 12-week leave under the Family and Medical Leave Act. Dkt. No. 31 at 6. In February 2025, Funderburk began administrative leave, and Bailey Boushay House asserts that Funderburk has not actively worked since then.

On August 8, 2025, Funderburk sued Bailey Boushay House, alleging discriminatory conduct including "[t]ermination of [their] employment," "[f]ailure to accommodate [their] disability" of anxiety, and "[r]etaliation." Dkt. No. 5 at 4. Funderburk asserts that they experienced a hostile work environment, that Bailey Boushay House treated them in a discriminatory manner when handling their reports and leave requests, and that it violated the Family Medical Leave Act (FMLA) by failing to reinstate them after their leave. *Id*. at 5.

Beginning on August 21, 2025, Human Resources sought to meet with Funderburk to discuss their employee status, but Funderburk refused to attend the meeting and stated they would only respond to written communication. Specifically, they wrote, "As you are aware, I am currently engaged in active litigation with Virginia Mason/CHI/CommonSpirit regarding my employment. To ensure a clear and accurate record, I request that all communications regarding my employment status be provided in writing. I will review and respond as appropriate." Dkt. No. 26-3 at 5. On September 8, 2025, Funderburk again requested written confirmation of employment status, without referencing a disability or impairment. Dkt. No. 31 at 6.

**ORDER** DENYING PLAINTIFF'S MOTION FOR EMERGENCY INJUNCTIVE RELIEF - 2

On October 1, 2025, after several attempts to schedule a meeting with Funderburk, a Human Resources representative scheduled a Zoom meeting for October 8 and warned, "[i]f you do not appear for the scheduled meeting or do not before that time provide me an alternative date/time within the next five workdays when you could attend this meeting, [the company] will treat your refusal to meet as a voluntary resignation, and thereafter will proceed to administratively terminate your employment." *Id*. at 11. In response, Funderburk stated, in part: "Because I am a party to ongoing federal litigation . . . and because I have a documented disability, I must request that all communications regarding my employment status be conducted in writing. This is both a reasonable ADA [Americans with Disabilities Act] accommodation and necessary to ensure that there is a clear and accurate record of communications during the course of litigation." *Id*. at 12.

Funderburk did not attend the meeting, and on October 8, they filed a motion for an emergency preliminary injunction. Dkt. No. 26. The motion seeks an order: (1) enjoining defendants from treating nonattendance at the October 8 meeting as voluntary resignation or grounds for termination; (2) reinstating employment status, pay, and benefits if termination has occurred; (3) compelling defendants to communicate in writing for all employment-related matters as an ADA accommodation; and (4) maintaining this relief until further order. Dkt. No. 26-2.

### 3.  DISCUSSION

A TRO is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council,*

*Inc.*, 555 U.S. 7, 22 (2008). "[A] plaintiff seeking a [TRO] must make a clear showing that '[they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest.'" *Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1576 (2024) (quoting *Winter*, 555 U.S. at 20). These four elements—the *Winter* factors—apply whenever a preliminary injunction is sought. *Winter*, 555 U.S. at 20. To obtain relief, a plaintiff must "make a showing on all four prongs." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135. (9th Cir. 2011). The first *Winter* factor, "[l]ikelihood of success on the merits[,] is the most important[.]" *Edge v. City of Everett*, 929 F.3d 657, 663 (9th Cir. 2019).

Where, as here, a party proceeds pro se, district courts must construe their filings liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But even so, pro se litigants remain subject to the stringent procedural and substantive rules that govern TROs. *See Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995).

Bailey Boushay House argues that the Court should deny the motion because it's unrelated to the misconduct alleged in the underlying complaint. The Court agrees and denies the motion on that basis. "[T]here must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 638 (9th Cir. 2015). "When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction." *Id.* at 633. "Though new assertions of misconduct might support

ORDER DENYING PLAINTIFF'S MOTION FOR EMERGENCY INJUNCTIVE RELIEF - 4

additional claims against a defendant, they do not support preliminary injunctions entirely unrelated to the conduct asserted in the underlying complaint." *Id.* at 637.

While the complaint includes a conclusory, legal assertion that Bailey Boushay House failed to accommodate Funderburk's disability of anxiety, *see* Dkt. No. 5 at 4, it contains no facts related to any accommodation request—much less a request to communicate only in writing about employment status. This is unsurprising given that Funderburk's alleged ADA accommodation request came after they filed their complaint. Because the wrongful conduct alleged in the complaint is not sufficiently related to the wrongful conduct alleged in Funderburk's motion, the Court lacks authority to grant the preliminary relief requested.

Indeed, Funderburk's complaint criticized Bailey Boushay House for improperly "refer[ring] [them] to a disability accommodation process for a workplace safety issue." Dkt. No. 5 at ¶ 5. Yet Funderburk now seeks a court-ordered disability accommodation. This about-face underscores the absence of any nexus between the underlying complaint and this motion.

The Court also denies the motion because Funderburk has failed to demonstrate irreparable harm. "Irreparable harm is . . . harm for which there is no adequate legal remedy, such as an award of damages." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). Funderburk argues that termination and loss of health insurance are irreparable harm. But they cite no precedent to support that claim, and courts generally find that "[i]n the employment context, discharge and its associated consequences do not ordinarily constitute irreparable harm[.]" *O'Hailpin v. Hawaiian Airlines, Inc.*, 583 F. Supp. 3d 1294, 1302 (D.

**ORDER** DENYING PLAINTIFF'S MOTION FOR EMERGENCY INJUNCTIVE RELIEF - 5

Hawai'i 2022) (citing *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974)). As the

Supreme Court explained in *Sampson*, "external factors common to most discharged

employees," such as insufficient savings, difficulties obtaining other employment—

or, as alleged here, loss of health insurance—do not support a finding of irreparable

injury. *See* 415 U.S. at 92 n.68. Courts typically find that loss of employment is

compensable by monetary damages. *O'Hailpin*, 583 F. Supp. 3d at 1303 (collecting

cases). The Court recognizes that loss of employment and the associated

consequences may pose serious harm. But that harm is reparable, making

preliminary injunctive relief inappropriate.

## 4.   CONCLUSION

Accordingly, Funderburk's motion for emergency injunctive relief is DENIED.

Dkt. No. 26. IT IS SO ORDERED.

Dated this 17th day of October, 2025.

Jamal N. Whitehead
United States District Judge